UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTOPHER DRESSER | CIVIL ACTION |
| VERSUS | NO: 98-2425 |
| THE OHIO HEMPERY, INC., ET AL. | SECTION: R |

**ORDER AND REASONS**

In this products liability case, plaintiff Christopher Dresser seeks to reopen the case and to lift the stay.[1] Because the merits of Dresser's allegations could be decided on appeal of related administrative proceedings, the Court DENIES Dresser's motion.

## I. BACKGROUND

Plaintiff was a United States Coast Guard-licensed vessel engineer. Before taking a Coast Guard drug test, he allegedly ingested "Hemp Liquid Gold," a product manufactured and

[1] R. Doc. 188.

distributed by defendant Oakmont Investment, and other similar products. Plaintiff contends that he believed that the products were healthful and free of any ingredients that produce any of the risks associated with marijuana use. Plaintiff later tested positive for marijuana/THC. As a result of the positive test result, the Coast Guard charged plaintiff with Use of a Dangerous Drug and sought to have his license revoked. A Coast Guard Administrative Law Judge ("ALJ") held a hearing on the charges against Dresser in April and June of 1998. On August 17, 1998, plaintiff sued defendants in this Court as manufacturers, markets, distributers, and sellers of certain hemp oil products, the consumption of which caused a "false positive" on the drug test. Plaintiff seeks damages for emotional distress, as well as for a significant loss of earnings, earning capacity, pension benefits, medical insurance benefits and loss of other job-related benefits.

The Court stayed this matter on February 28, 2000, while initial administrative proceedings against Dresser were ongoing.[2] The Court reasoned that if the administrative proceedings resulted in a finding that plaintiff used marijuana, he could be collaterally estopped from arguing otherwise in this case. The

---

[2] R. Doc. 157.

National Transportation Safety Board ("NTSB") reversed the Coast Guard's decision in June of 2003 due to the appearance of a conflict of interest on the part of the ALJ who initially decided Dresser's administrative appeal. Dresser then moved to reopen this case because there was no longer an administrative opinion to form the basis for a collateral estoppel claim.

The Court reopened this case on July 2, 2003 but reissued the stay on March 8, 2004.[3] Plaintiff argued, in opposition to the stay, that he would not be able to fully and fairly litigate his hemp oil defense before the ALJ. The relevant Coast Guard regulation states: "If an individual fails a chemical test for dangerous drugs under this part, the individual will be presumed to be a user of dangerous drugs." 46 C.F.R. § 16.201(b). Dresser argued that he would not be able to rebut this presumption due to a policy memorandum issued to Coast Guard ALJs indicating that "accidental or inadvertent ingestion of a food product containing THC will only serve as a valid defense to a charge of use of dangerous drug if the Respondent produces reliable and credible evidence."[4]

---

[3] R. Doc. 183; *Dresser v. Ohio Hempery, Inc.*, No. 98-2425, 2004 WL 464895 (E.D.La. Mar. 8, 2004).

[4] R. Doc. 188, Ex. 1, *Coast Guard Chief Administrative Law Judge Memorandum*, dated Oct. 22, 2001.

The Court ruled that this policy memorandum, even if it has binding legal effect, did not foreclose Dresser's defense that he ingested the hemp product without knowing that it contained THC.[5] The same issue arises in both this case and the administrative proceeding: whether Dresser inadvertently consumed THC by ingesting defendant's hemp oil product. The Court further ruled that the legal standard that Dresser had to meet in the administrative proceeding to rebut the presumption that he used a dangerous drug is identical to the "preponderance of the evidence" standard he has to meet in this case. Thus, the Court stayed these proceedings in the interest of efficiency and because the plaintiff could be collaterally estopped from relitigating whether he used marijuana if that issue were decided in the administrative action. The Fifth Circuit then dismissed Dresser's attempt to appeal the stay.[6]

On June 14, 2005, after both sides presented additional exhibits and witness testimony, ALJ Brudzinski held that Dresser failed to rebut the presumption that he used marijuana.[7] The ALJ

---

[5] *Dresser v. Ohio Hempery, Inc.*, No. 98-2425, 2004 WL 464895 (E.D.La. Mar. 8, 2004).

[6] *Dresser v. Ohio Hempery Inc.*, 122 Fed.Appx. 749 (5th Cir. 2004).

[7] R. Doc. 194, Ex. 3.

therefore revoked Dresser's Coast Guard license and merchant mariner documents. Dresser appealed that decision to the Commandant, who affirmed the ALJ's decision.[8]

Dresser also filed a separate suit against various Coast Guard ALJs, their clerks and administrative staff, and the Commandant of the Coast Guard and his legal staff for declaratory and injunctive relief, writs of mandamus, and *Bivens* actions. Dresser maintained that ALJ Brudzinski's decision was unconstitutional because of (1) *ex parte* communications between ALJ Brudzinski and Chief ALJ Ingolia, as well as other named defendants, and (2) an institutionalized ALJ policy to rule in favor of the Coast Guard regarding hemp seed oil defenses to positive toxicology tests. In that proceeding, the Fifth Circuit affirmed the district court's ruling that it could not hear Dresser's claims under the Administrative Procedures Act because there was no "final agency action" at that time, as the Commandant had not yet decided Dresser's appeal of the ALJ's decision.[9] The Fifth Circuit also ruled that the Court lacked jurisdiction to hear plaintiff's *Bivens* claims because those

---

[8] *See Dresser v. Ingolia*, 307 Fed.Appx. 834, 839 (5th Cir. 2009).

[9] *Id.* at 840-41.

claims were “inescapably intertwined” with a review of the ALJ’s decision.[10]

After the Commandant issued a ruling that was not in his favor, Dresser filed suit again, urging the same APA and *Bivens* claims. The district court held again that it lacked jurisdiction over Dresser’s APA claims, despite the Commandant’s decision in the interim, because Dresser failed to appeal the decision of the Commandant first to the NTSB and then to the Court of Appeals as required under 49 U.S.C. §§ 1133 and 1153.[11] The court also held that Dresser’s *Bivens* claims remained inescapably intertwined with a review of the ALJ’s decision, which could not occur without following the appeals process mandated by statute. Dresser’s appeal of that decision is pending in the Fifth Circuit.

Dresser now moves that this case be reopened and that the stay be lifted. Defendant argues that Dresser is collaterally estopped from claiming that its hemp oil product rather than marijuana caused the positive drug test.

---

[10] *Id.* at 841-43.

[11] *Dresser v. Meba Medical Benefits Plan*, Nos. 08-2662, 09-2755, 08-2663, 2010 WL 1254624 at *5-8 (E.D.La. March 24, 2010) (Berrigan, J.).

## II. STANDARD

This Court has the inherent power to stay any matter pending before it in the interests of justice and "economy of time and effort for itself, for counsel and for litigants." *Laitram Machinery, Inc. v. Carnitech* A/S, 908 F.Supp. 384, 387 (E.D. La. 1995) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 166 (1936)). A court may stay an action, pending resolution of independent proceedings which bear upon the case, regardless of whether the parallel proceedings are "judicial, administrative, or arbitral in character." *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983). The rule does not require that the issues in the other proceedings necessarily control the action before this Court. *Id*. The Court therefore has the discretion to keep the stay of these proceedings in place pending the resolution of the administrative action. *See Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289 (1983) (upholding stay pending administrative proceedings); *Rogers v. Columbia/HCA of Central Louisiana, Inc.*, 961 F.Supp. 960, 966-68 (W.D.La. 1997) (applying primary jurisdiction doctrine to stay case pending outcome of hospital peer review proceedings).

The Court previously stayed this case due to ongoing administrative proceedings. A final judgment in a federal

administrative proceeding has preclusive effect when that proceeding is "judicial" in nature and the elements of collateral estoppel are met. *See Grace v. Keystone Shipping Co.*, 805 F.Supp. 436 (E.D. Tex. 1992) (Coast Guard ALJ's finding in administrative hearing had preclusive effect in later maritime action) (citing *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991); *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)); *see also Castillo v. Railroad Retirement Bd.*, 725 F.2d 1012, 1014 (5th Cir. 1984) (administrative determination that employee was not disabled precluded relitigation in later proceeding); *Painters District Council No. 38 v. Edgewood Contracting Co.*, 416 F.2d 1081, 1083-84 (5th Cir. 1969) (N.L.R.B. finding that union had engaged in an unfair labor practice had preclusive effect in subsequent litigation).

Collateral estoppel bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 128 S.Ct. 2161, 2171 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). The purposes of collateral estoppel are to protect parties from multiple lawsuits, to avoid the possibility of inconsistent decisions, and to conserve

judicial resources. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 553 (1990). To establish collateral estoppel under federal law, a party must show: "(1) that the issue at stake [is] identical to the one involved in the prior litigation; (2) that the issue has been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action." *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009). Further, an earlier decision has preclusive effect only if the party against whom that decision was made had a "full and fair opportunity" to litigate the issue. *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 480-81 (1982); *Rabo Agrifinance, Inc.* 583 F.3d 348 at 353; *Utah Constr. & Mining Co.*, 384 U.S. at 422. "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Kremer*, 456 U.S. at 481 (quoting *Montana v. United States*, 440 U.S. 147, 164 n.11 (1979)); *see also Griffen v. Big Spring Independent School Dist.*, 706 F.2d 645, 654 (5th Cir. 1983), *cert. denied*, 464 U.S. 1008 (1984) (same). Nevertheless, a "refusal to give the first judgment preclusive effect should not occur without a compelling showing of unfairness[.]" Restatement (Second) of Judgments § 28 cmt. j (1982).

## III. DISCUSSION

Dresser argues that he is not collaterally estopped from contending that his positive drug test was the result of drinking the defendant's liquid hemp product because he did not have a full and fair opportunity to litigate that issue in the Coast Guard's administrative system. He brings forward evidence which, he argues, demonstrates that ALJ Brudzinski's 2005 decision and the Commandant's affirmation of that decision were essentially predetermined and did not result from a fair process.

The Court will not evaluate Dresser's allegations at this time. If Dresser wins his Fifth Circuit appeal in his separate suit against various Coast Guard ALJs and associated personnel, he will return to the district court to directly challenge the administrative proceedings. Dresser's arguments in that case are the same as those he is making here. Namely, he argues in both cases that the administrative proceedings were unfair because of (1) *ex parte* communications between ALJ Brudzinski and Chief ALJ Ingolia and others, and (2) an institutionalized ALJ policy to rule in favor of the Coast Guard regarding hemp seed oil defenses to positive toxicology tests. These issues should be decided in the first instance on direct appeal of the administrative proceedings, if that appeal is allowed to proceed.

Further, a decision as to whether unfairness in the administrative proceedings violated Dresser's due process rights could have preclusive effect in this case on the issue of whether Dresser had a "full and fair" opportunity to litigate his hemp oil defense. In other words, a ruling that the administrative proceedings were fair could collaterally estop Dresser from arguing to the contrary in this case. For issues to be identical for collateral estoppel purposes, "[n]ot only the facts, but also the legal standard used to assess them, must be identical." *Brister v. A.W.I., Inc.*, 946 F.2d 350, 354 n.1 (5th Cir. 1991). The Supreme Court has stated that "what a full and fair opportunity to litigate entails is the procedural requirements of due process." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 483 n.24 (1982) (state court decision has preclusive effect if it meets due process); *see also Phelps v. Hamilton*, 122 F.3d 1309, 1323 (10th Cir. 1997) (applying due process standard to question of whether party had full and fair opportunity to litigate claim in prior state court proceeding in spite of alleged judicial bias); *Dash, Inc. v. Alcoholic Beverage Control Appeals Bd.*, 683 F.2d 1229, 1232-33 (9th Cir. 1982) (whether state administrative proceedings provided full and fair opportunity to litigate "merges" with the question of whether those proceedings satisfy procedural due process).

The Court need not decide the "collateral estoppel upon collateral estoppel" issue at present. Rather, the Court finds that a direct appeal, if allowed to proceed, would be a more appropriate vehicle than this collateral action for challenging the fairness of the administrative proceedings. Dresser's pending appeal to the Fifth Circuit seeks to allow his direct appeal of the administrative decision to go forward. Therefore, the Court will not lift the stay or reopen the case at this time.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion to reopen the case and to lift the stay is DENIED.

New Orleans, Louisiana, this 13th day of September, 2010.

Sarah Vance

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE